# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **SHENJI LIU** | ) | |
| | ) | **Case No. 3:24-cv-00641** |
| **v.** | ) | **Judge Richardson** |
| | ) | **Magistrate Judge Holmes** |
| **LANCER INSURANCE COMPANY** *et al.* | ) | |

To:    **The Honorable Eli J. Richardson, United States District Judge**

## REPORT AND RECOMMENDATION

This *pro se* civil case has been referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72 of the Federal Rules of Civil Procedure, and the Local Rules of Court. (Docket No. 6.)

Pending before the Court are three motions to dismiss the claims of Plaintiff Shenji Liu:

1.    Defendant Kay Griffin Evans PLLC's ("Kay Griffin") motion (Docket No. 18), to which Liu responded (Docket No. 20) and Kay Griffin replied (Docket No. 26);[1]

2.    Defendant Lancer Insurance Company's ("Lancer Insurance") motion (Docket No. 19), to which Liu did not respond; and

3.    Defendant Richard L. Grant's ("Grant") motion (Docket No. 23), to which Liu responded (Docket No. 28) and Grant replied (Docket No. 29).[2]

---

[1] Liu filed a "Motion to Dismiss Defendant's [Doc 18] with Prejudice and Impose Sanction Against the Defendant" (Docket No. 20), which this Court considers to be Liu's response in opposition to Kay Griffin's motion to dismiss.

Kay Griffin then filed a "Response in Opposition to Liu's Motion to Dismiss Kay Griffin Evans PLLC's Motion to Dismiss [Doc. 18] with Prejudice and Impose Sanctions [Doc. 20]" (Docket No. 26), which this Court considers to be Kay Griffin's reply in support of its motion to dismiss.

[2] As detailed below, the Court has not considered Liu's arguments in his response – titled "Motion to Dismiss Defendant Grant's Motion to Dismiss [Doc 23] and impose sanction against defendant's counsel according to Rule 3.3 and Rule 8.4" (Docket No. 28) – because it was not timely filed pursuant to Local Rule 7.01(a)(3). The Court has also not considered Liu's argumetns in his sur-reply – titled "Motion to Dismiss Defendant's Motion to Dismiss [Doc 23, 29] with

For the reasons set forth below, the undersigned respectfully recommends that Kay Griffin's motion to dismiss (Docket No. 18) be **GRANTED**; that Lancer Insurance's motion to dismiss (Docket No. 19) be **GRANTED**; and that Grant's motion to dismiss (Docket No. 23) be **GRANTED**.

## I.      BACKGROUND

**A.      Procedural Background**

Liu filed this lawsuit *pro se* on May 23, 2024. (Docket No. 1.) In his original complaint, he explicitly named only two defendants: Lancer Insurance Company and Lancer Management Company (collectively, "Lancer"). Lancer filed a motion to dismiss. (Docket No. 8.) In response, Liu filed an amended complaint naming several more defendants. (Docket No. 15.) That amended complaint is now the operative complaint.

Although this lawsuit was only recently filed, Liu and Lancer have long been in a dispute with an protracted and tortuous procedural and legal history. Liu is an individual who operates a trucking and transport business under the name Stone Buddha Transport. (*Id.* at ¶ 4.) Lancer previously issued a commercial auto policy (the "Policy") to Liu. (*Id.* at ¶ 5.) In June 2019, one of Liu's trucks (the "Truck") sustained damage in an accident in California that was caused by the driver of another vehicle. (*Id.* at ¶ 18.) Liu made a claim with Lancer under the Policy for the damage to the Truck. (*Id.* at ¶ 19.) In September 2020, Liu filed a lawsuit in California state court and brought claims against Lancer for its alleged misconduct in handling the claim regarding the Truck (the "California Lawsuit"). (*Id.* at ¶ 13.) However, Liu's California lawsuit against Lancer was dismissed in February 2024. (*Id.* at ¶ 47.)

---

Prejudice and Impose Sanctions Against Defendan [sic]" (Docket No. 30) – because it was not permitted.

While the California lawsuit was pending, Lancer filed a declaratory judgment action in this Court: *Lancer Ins. Co. et al. v. Liu*, Case No. 3:23-cv-00010 (the "Original Lawsuit"). The Original Lawsuit remains pending. In the Original Lawsuit, Lancer seeks a declaratory judgment that Lancer has paid or offered to pay to Liu the full amount that Lancer is obligated to pay under the Policy. (Case No. 3:23-cv-00010, Docket No. 1.) In response, Liu asserted counterclaims against Lancer alleging wrongdoing by Lancer in their handling of the claim.[3] Lancer moved to dismiss the counterclaims under Rule 37(b)(2)(A) and Rule 41(b) because Liu failed to provide "complete and substantive answers" to discovery requests. (Case No. 3:23-cv-00010, Docket No. 59.) The undersigned entered a Report and Recommendation recommending that the counterclaims be dismissed (Case No. 3:23-cv-00010, Docket No. 82), which the District Judge adopted (Case No. 3:23-cv-00010, Docket No. 100).

In addition, both Liu and Lancer have filed motions for summary judgment in the Original Lawsuit, both of which remain pending. The Original Lawsuit has not yet been set for a trial.

## B.  Factual Background

In his amended complaint in this lawsuit, Liu names seven defendants: (1) Lancer Insurance Company; (2) Lancer Management Company; (3) Mark Slane ("Slane"); (4) Kay Griffin; (5) Grant; (6) Tennessee Department of Commerce and Insurance ("TDCI"); and (7) Tennessee Board of Professional Responsibility ("TBPR").

The majority of Liu's complaint is addressed towards Lancer and their alleged "mishandling of Plaintiff's insurance claim" and "misconduct." (*Id.* at ¶ 1.) As set forth above, one

---

[3] In his counterclaims, Liu failed to set out clearly defined legal claims, but asserted that Lancer committed various acts of breach of contract, bad faith, deceptive and fraudulent practices, unfair settlement practices, and fraud. (Case No. 3:23-cv-00010, Docket No. 14 at 7–8.) Liu also asserted that Lancer "behaved so badly due to defendant's race, and … may have committed race-based discrimination and a hate crime." (*Id.* at 8.)

3

of Liu's trucks sustained damage in an accident in California and Liu made a claim with Lancer under the Policy for the damage. (*Id.* at ¶¶ 18–19.) Liu and Lancer remained in contact regarding Liu's claim and the status of the Truck. However, Liu was not satisfied with either the processing of his claim or the amount tendered to him as payment. Liu provides detailed allegations regarding his communications with Lancer, including complaints he made directly to Lancer regarding the claims handling process and the status of his Truck. (*Id.* at ¶¶ 18–35.)

In short, Liu alleges that Lancer failed to fulfill their obligations under the Policy, acted in bad faith when handling his claim, stole the Truck, and committed perjury and falsified documents in the Original Lawsuit. Liu asserts the following sixteen (16) claims against Lancer: (1) breach of contract; (2) bad faith; (3) fraud; (4) conversion; (5) negligence; (6) violation of consumer protection laws; (7) intentional infliction of emotional distress; (8) perjury and submission of falsified evidence; (9) abuse of declaratory judgment; (10) retaliation and refusal to engage in reasonable settlement negotiations; (11) pattern of wrongdoing and misconduct; (12) violation of the Unfair Claims Settlement Practices Act (UCSPA); (13) intentional misrepresentation; (14) breach of duty of good faith and fair dealing; (15) violation of Tennessee UM/UIM coverage requirements; and (16) false assertion of legal authority. (*Id.* at ¶¶ 57–184.)

Defendant Slane is alleged to own Alignment Express, a California-based company. (*Id.* at ¶ 26.) Liu alleges that Lancer hired non-party Don Marker, who inspected the Truck, wrongly found that the Truck was a "total loss," and told Slane to pick up the Truck. (*Id.* at ¶¶ 23–26.) Liu contends that Slane is liable to him "for buying and selling stolen vehicle, moving the stolen vehicle from Mexico to San Diego and holding it for towing and storage fee and falsifying lien[.]" (*Id.* at ¶ 7.) Liu asserts one claim against Slane for conversion. (*Id.* at ¶ 60.)

4

Defendant Kay Griffin is a law firm that represents Lancer in the Original Lawsuit. (*Id.* at ¶ 3.) Liu alleges that Kay Griffin filed a "frivolous lawsuit" when it commenced the Original Lawsuit and that it "knowingly submit[ed] multiple false evidences" in the Original Lawsuit. (*Id.*) Liu references motions that he filed in the Original Lawsuit when discussing his allegations against Kay Griffin. (*Id.* at ¶ 53.) Liu asserts two claims against Kay Griffin for its representation of Lancer in the Original Lawsuit: (1) "perjury and submission of falsified evidence," and (2) "abuse of declaratory judgment." (*Id.* at ¶¶ 65–66.)

Defendant Grant was Liu's counsel in the California Lawsuit, which Liu filed against Lancer. (*Id.* at ¶ 8.) Liu asserts that Grant is responsible for "multiple negligence and malpractices, including filing a lawsuit in wrong court, accepting Lancer's payment without client's authorization and holding the settlement and documents after withdrawal, which were used as evidence in Lancer's declarations." (*Id.*) Liu asserts one claim against Grant for "negligence and malpractice" with respect to Grant's representation of Liu in the California lawsuit. (*Id.* at ¶ 185–86.)

Defendant TDCI is a department of the state of Tennessee. (*Id.* at ¶ 9.) Liu alleges that he formally complained to TDCI on July 25, 2019 regarding Lancer's handling of the claim, but that TDCI found no improper actions on Lancer's part. (*Id.* at ¶ 36.) Liu generally asserts that TDCI "failed to take actions such as license suspension or revocation to protect consumers and maintain a stable insurance market when an insurer violates rules or engages in misconduct." (*Id.* at ¶ 9.) Accordingly, Liu asks that TDCI "answer for the administrative failure and attend the hearing of Lancer's potential perjury and other misconducts which may lead to suspend Lancer's license to do business in the state." (*Id.* at ¶ 36) Liu asserts one claim against TDCI for administrative failure. (*Id.* at ¶¶ 187–89.)

Defendant TBPR is a board of the state of Tennessee. (*Id.* at ¶ 10.) Liu alleges that he filed a complaint with TBPR regarding "the facts that Lancer attorney Charles Sharrett had submitted false evidences to the court and committed perjuries," but TBPR failed to investigate. (*Id.* at ¶ 54.) Liu generally asserts that TBPR is "alleged for administrative failure in handling complaint [sic] of violations of the rules of professional conduct." (*Id.* at ¶ 10.) Accordingly, Liu asks that TBPR "answer its administrative failure and attend hearing of Lancer attorneys' misconducts which may lead to suspend or revoke their license." (*Id.* at ¶ 54.) Liu asserts one claim against TBPR for administrative failure. (*Id.* at ¶¶ 187–89.)

In total, Liu asserts eighteen (18) claims against the defendants:

| | Claim | Defendant(s) | Paragraph(s) (Docket No. 15) |
|---|---|---|---|
| 1 | Breach of Contract | Lancer | 57 |
| 2 | Bad Faith | Lancer | 58 |
| 3 | Fraud | Lancer | 59 |
| 4 | Conversion | Lancer & Slane | 60 |
| 5 | Negligence | Lancer | 61 |
| 6 | Violation of Consumer Protection Laws | Lancer | 62 |
| 7 | Intentional Infliction of Emotional Distress | Lancer | 63 |
| 8 | Perjury and Submission of Falsified Evidence | Lancer & Kay Griffin | 65[4] |
| 9 | Abuse of Declaratory Judgment | Lancer & Kay Griffin | 66 |
| 10 | Retaliation and Refusal to Engage in Reasonable Settlement Negotiations | Lancer | 67 |

---

[4] Plaintiff assigned Paragraph 64 to the name of his eighth claim.

| 11 | Pattern of Wrongdoing and Misconduct | Lancer | 68 |
|----|-------------------------------------|--------|-----|
| 12 | Violation of the Unfair Claims Settlement Practices Act (UCSPA) | Lancer | 157–62[5] |
| 13 | Intentional Misrepresentation | Lancer | 163–69 |
| 14 | Breach of Duty of Good Faith and Fair Dealing | Lancer | 170–74 |
| 15 | Violation of Tennessee UM/UIM Coverage Requirements | Lancer | 175–78 |
| 16 | False Assertion of Legal Authority | Lancer | 179–84 |
| 17 | Negligence and Malpractice | Grant | 185–86 |
| 18 | Administrative Failure | TDCI & TBPR | 187–89 |

Plaintiff asserts that the Court has subject matter jurisdiction over his claims pursuant to 28 U.S.C. § 1332 because Plaintiff is a "citizen of Tennessee" and Defendants are "citizens of different states," and pursuant to 28 U.S.C. § 1367 because his state law claims are "so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy." (Docket No. 15 at ¶¶ 11, 13.)

## II.  LEGAL STANDARDS

In reviewing a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept the well-pleaded material allegations of the pleadings as true. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Additionally, the Court is required to give the pleadings of *pro se* litigants a liberal construction. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999).

---

[5] Plaintiff did not include Paragraphs 69 to 156 in his amended complaint.

7

Although the complaint need not contain detailed factual allegations, the factual allegations supplied must be enough to show a plausible right to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–61 (2007). To state a plausible claim for relief, the alleged facts must provide "more than a sheer possibility that a defendant has acted unlawfully." *Mik v. Federal Home Loan Mortg. Corp.*, 743 F.3d 149, 157 (6th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). The well-pleaded factual allegations must "do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgement under Rule 56. Fed. R. Civ. P. 12(d). However, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion dismiss into one for summary judgment. *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791–92 (M.D. Tenn. 2018).

### III.    ANALYSIS

#### A.    KAY GRIFFIN'S MOTION (DOCKET NO. 18)

In its motion, Kay Griffin asks this Court to dismiss Liu's claims against it for "perjury and submission of falsified evidence" and "abuse of declaratory judgment" pursuant to Rule 12(b)(6) because: (1) there is no civil action for perjury; (2) "submission of falsified evidence" and "abuse of declaratory judgment" are not recognized causes of action; (3) the doctrine of litigation privilege bars the claims; (4) Plaintiff has not alleged sufficient facts to demonstrate the plausibility of his claims; (5) the doctrine of *res judicata* bars the claims; and (6) the doctrine of improper claim

splitting bars the claims. (Docket No. 18 at 3–11.) Kay Griffin also asks the Court to strike two paragraphs from the amended complaint pursuant to Rule 12(f). (*Id.* at 11.) The Court will address Kay Griffin's claims in order:

### 1.    Sufficiency of "Perjury" Claim Under Rule 12(b)(6)

In his amended complaint, Liu alleges that Kay Griffin and Lancer both committed perjury by "knowingly presenting falsified information" in the Original Lawsuit and the California Lawsuit. (Docket No. 18 at ¶ 65.) With respect to the Original Lawsuit, Liu asserts that perjury occurred when Kay Griffin and Lancer submitted "a plaintiffs [sic] release letter signed by unknown person to support motion to stay or dismiss" and "multiple false evidences in the declaration judgment compliant [sic] and following motions to dismiss." (*Id.*) Liu contends that these actions harmed him and "undermined the integrity of the legal process." (*Id.*)

In its motion, Kay Griffin asserts that this claim must be dismissed because there is no civil claim for perjury and no caselaw to suggest that an attorney may be sued in a civil action for perjury. (Docket No. 18 at 3–4.)

In response, Liu appears to agree that perjury is not a standalone claim. (Docket No. 20 at 7) ("In plaintiffs [sic] compliant [sic], the defendant's perjuries are elements or facts rather than claims."). Instead, Liu argues that allegations of Kay Griffin and Lancer's perjury support other claims, including for "submission of falsified evidence" and "abuse of declaratory judgment." (*Id.*) Nevertheless, Liu asserts that "[c]itizen plaintiffs can file[] civil suit based on perjury in Tennessee." (*Id.* at 5–7.) However, the cases to which Liu cites do not stand for such a proposition. *See Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 73 (Tenn. 2001) (discussing whether and when committing perjury destroys the testimonial privilege); *State ex rel. Wolfenbarger v. Moore*, No. E2008–02545–COA–R3–CV, 2010 WL 520995, at *4 (Tenn. Ct. App. Feb. 12, 2010)

9

(examining whether a trial court applied the correct evidentiary standard when determining whether a public official committed perjury and should have, therefore, been ousted from office) ("The Trial Court in this case did not err when it applied the clear and convincing standard to the question of whether Mr. Moore's testimony in the Open Meetings Litigation was perjury.") In short, neither case supports Liu's position that he may bring a civil action against Kay Griffin or Lancer for perjury.[6]

The Court agrees with Kay Griffin that there is no civil claim for perjury. It is "well-settled that Tennessee does not recognize a civil action for perjury … ." *Goetz v. Autin*, No. W2022-00393-COA-R3-CV, 2023 WL 2545712, at *18 (Tenn. Ct. App. Mar. 17, 2023) (citing *Felts v. Paradise*, 158 S.W.2d 727, 728 (Tenn. 1942) ("It is the well-settled law that an action at law will not lie to recover damages for perjury alleged to have been committed in a former case in which the plaintiff might have been interested.); *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 231 (Tenn. Ct. App. 2000), perm. app. denied (Tenn. Sept. 25, 2000); *Lacky v. Carson*, 886 S.W.2d 232, 232 (Tenn. Ct. App. 1994), perm. app. denied (Tenn. Sept. 6, 1994); *Medlock v. Ferrari*, 602 S.W.2d 241, 245 (Tenn. Ct. App. 1979), perm. app. denied (Tenn. Nov. 13, 1979)). *See also Chaves v. Eacott*, No. 3:13–CV–114–TAV–HBG, 2014 WL 619716, at *3 (E.D. Tenn. Feb. 18, 2014) ("The Court agrees with defendants that there is no civil claim for perjury… . Moreover, there is no cause of action for perjury under [Tennessee] state law.") (citations omitted).

For these reasons, the Court finds that Liu has failed to adequately state a claim for perjury, which warrants dismissal of this claim, which is made against both Kay Griffin and Lancer, in its entirety.

---

[6] Plaintiff also references a lawsuit related to O.J. Simpson, but provides no case citations. (Docket No. 20 at 5.) Accordingly, the Court will disregard Plaintiff's argument about this unknown case.

10

## 2. Sufficiency of "Submission of Falsified Evidence" and "Abuse of Declaratory Judgment" Claims Under Rule 12(b)(6)

Kay Griffin asks the Court to dismiss Liu's claims against it and Lancer for "submission of falsified evidence" and "abuse of the declaratory judgment process" because they are not recognized causes of action. (Docket No. 18 at 4.) Liu's allegations for "submission of falsified evidence" are the same as his allegations for perjury. (Docket No. 18 at ¶ 65.) In short, he contends that Kay Griffin and Lancer submitted "false evidence" when Kay Griffin's attorneys, acting on behalf of Lancer, filed the complaint and certain motions to dismiss in the Original Lawsuit. (*Id.*) Liu's allegations for "abuse of the declaratory judgment process" also relate to Kay Griffin's representation of Lancer in the Original Lawsuit. (*Id.* at ¶ 66.) Liu alleges that Kay Griffin and Lancer abused the process by: (1) filing a declaratory judgment action "to bolster their prior misconduct and evade accountability for existing disputes"; (2) failing to provide evidence to show that they did not commit bad faith or misconduct; and (3) filing motions to dismiss based on false statements. (*Id.*)

Kay Griffin implies that these two claims are about misuse of the legal process, which it argues may be addressed, but not through the claims that Liu has asserted. Kay Griffin argues that Liu's complaints about misuse of the legal process could be addressed as one of the following: (1) a malicious prosecution claim, (2) an abuse of process claim, (3) a claim for negligently supplying false information for the guidance of others in business transactions, or (4) a claim with the Board of Professional Responsibility for alleged violations of the rules of professional conduct. (Docket No. 18 at 4–5 (citing *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. 1999); *Stinson v. Brand*, 738 S.W.2d 186, 190 (Tenn. 1987); *Unarco Material Handling, Inc. v. Liberato*, 317 S.W.3d 227, 239 (Tenn. Ct. App. 2010)).) Kay Griffin

11

argues, however, that Liu has not asserted any of these four claims, and even if he had, he has not alleged facts to support these claims. (*Id.*)

Liu does not explicitly respond to Kay Griffin's argument that these two claims are not recognized causes of action. Instead, Liu focuses on semantics and emphasizes that the terms "cause of action" and "claim" are distinct. (Docket No. 20 at 8.) He states that only a "claim" can be dismissed, and that a "cause of action" is a "set of factual statements" that cannot be dismissed unless Kay Griffin "can present evidences showing it is false evidence." (*Id.*) From what the Court can parse of this argument, it appears that Liu believes that it is Kay Griffin's burden to prove that Liu's claims are factually unsupportable. However, that is not the standard under Rule 12(b)(6). Instead, it is Liu's burden to show "more than a sheer possibility" that Kay Griffin and Lancer have "acted unlawfully." *Mik*, 743 F.3d at 157.

Taking all the well-pleaded factual allegations as true, Liu has not shown that he has a plausible right to relief against Kay Griffin and Lancer for their alleged "submission of falsified evidence" or "abuse of the declaratory judgment process." Because Liu is proceeding *pro se*, the allegations within his amended complaint must be liberally construed when determining whether the amended complaint fails to state a claim upon which relief can be granted. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, this liberal treatment is not without limits. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Basic pleading rules still apply for *pro se* litigants, as bald assertions and personal opinions will not suffice. *See Wells v. Brown*, 891 F.2d 591, 594.

Liu has failed to meaningfully respond to Kay Griffin's assertion that these two claims are not recognized causes of action. Instead, Liu has relied on the factual allegations in his complaint, which have merely created speculation or suspicion of a legally cognizable cause of action. Such speculation is not enough to survive a motion to dismiss made pursuant to Rule 12(b)(6). *See*

*League of United Latin Am. Citizens*, 500 F.3d at 527. In sum, the Court finds that Liu's allegations against Kay Griffin and Lancer do not plausibly support a claim for either "submission of falsified evidence" or "abuse of the declaratory judgment process."

For these reasons, the Court finds that Liu has failed to adequately state a claim for either "submission of falsified evidence" or "abuse of the declaratory judgment process," which therefore necessitates that these claims, which are made against both Kay Griffin and Lancer, be dismissed in their entirety.

### 3. Litigation Privilege

Kay Griffin also asks the Court to dismiss Liu's claims against it because it is shielded by "litigation privilege." (Docket No. 18 at 6–7.) The litigation privilege in Tennessee protects an attorney and immunizes him from suit when the following factors are present: (1) the attorney was acting in the capacity of counsel for a client or identifiable prospective client when the conduct occurred, (2) the attorney was acting in good faith for the benefit of and on behalf of the client or prospective client, not for the attorney's self-interest, (3) the conduct was related to the subject matter of active litigation or proposed litigation that was under serious consideration by the attorney, and (4) there was a real nexus between the attorney's conduct and that litigation.[7] *Rajapakse v. Baker Donelson Bearman Caldwell & Berkowitz, P.C.*, No. 13-2328-JDT-DKV, 2013 WL 3992523, at *10 (W.D. Tenn. Aug. 5, 2013) (citing *Unarco Material Handling, Inc. v.*

---

[7] Traditionally, the litigation privilege in Tennessee applied only to defamation claims and later only to conduct of a communicative nature. *Rajapakse v. Baker Donelson Bearman Caldwell & Berkowitz, P.C.*, No. 13-2328-JDT-DKV, 2013 WL 3992523, at *10 n.2 (W.D. Tenn. Aug. 5, 2013). However, other courts in Tennessee have recognized the litigation privilege beyond the defamation context. *See Unarco Material Handling, Inc. v. Liberato*, 317 S.W.3d 227, 238–39 (Tenn. Ct. App. 2010) (applying litigation privilege to claim of intentional interference with contract); *McWilliams v. Noel*, No. 12-3089-JDT-dkv, 2013 WL 5409887, at *9–10 (W.D. Tenn. Sept. 25, 2013) (applying Tennessee litigation privilege to allegations of due-process violations); *Rajapakse*, 2013 WL 3992523 at *10 (applying Tennessee litigation privilege to state-law claims).

13

*Liberato*, 317 S.W.3d 227, 238 (Tenn. Ct. App. 2010). The litigation privilege in Tennessee is absolute. *Id.* (citations omitted).

The Court finds that all four of the factors set forth in *Unarco* are present here. First, Liu alleges that Kay Griffin's attorneys were acting in their capacity as counsel for Lancer when it filed a "frivolous lawsuit" and "knowingly submit[ed] multiple false evidences" in the Original Lawsuit. (Docket No. 15 at ¶ 6.) Second, Liu fails to allege that any attorney at Kay Griffin was acting in their own self-interest rather than for the benefit of Lancer when they took the alleged actions in the Original Lawsuit. Third, the conduct about which Liu complains – filing a "frivolous lawsuit" and "knowingly submitting multiple false evidences" – is directly related to the Original Lawsuit. (*Id.*) Fourth and finally, all of Kay Griffin's alleged bad acts were undertaken in the court of the Original Lawsuit such that there was a "real nexus" between Kay Griffin's alleged conduct and the Original Lawsuit. Accordingly, Liu's claims against Kay Griffin for "submission of falsified evidence" and "abuse of the declaratory judgment process" are subject to dismissal based on the applicability of Tennessee's litigation privilege.[8]

### 4.     Request for Attorney's Fees

In its motion, Kay Griffin asks the Court to "award attorney fees and associated costs … pursuant to Rule 54(d)" but provides no basis for such an award and fails to comply with Local Rule 54.01. (Docket No. 18 at 12.) Accordingly, the Court finds that this request should be denied

---

[8] Because the Court recommends that all of Liu's claims against Kay Griffin be dismissed both for failure to state a claim and based on Tennessee's litigation privilege, the Court will not address Kay Griffin's arguments regarding res judicata and the doctrine of improper claim splitting. (Docket No. 18 at 8–11.)  Similarly, because the Court recommends that Kay Griffin be dismissed from this lawsuit, it is not necessary to reach the issue of whether paragraphs 53 and 54 ought to be stricken from Liu's amended complaint. Regardless of the propriety – or impropriety – of the statements in those numbered paragraphs, Kay Griffin will no longer be a party to this litigation and any allegations against it will have no effect.

14

without prejudice to refiling. Any future requests for costs and attorney's fees must be submitted in accordance with Local Rule 54.01.

**B.    LANCER'S MOTION (DOCKET NO. 19)**

In its motion, Lancer asks this Court to dismiss Liu's claims against it pursuant to Rule 12(b)(6) because the claims are precluded by the doctrines of res judicata and improper claim splitting (Docket No. 19 at 3–9), and pursuant to Rule 12(b)(5) for insufficient service of process (*id.* at 9–10).

As an initial matter, Liu has not responded to Lancer's motion. Under the Local Rules, Liu's failure to file a response permits the Court to treat the motion as unopposed. Local R. 7.01(a)(3) ("If a timely response is not filed, the motion shall be deemed to be unopposed.") *See also Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470 at *2 (6th Cir.1989) (unpublished table decision) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion.").

Although the Court recognizes that Liu is proceeding *pro se*, that does not excuse him from complying with the Local Rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (noting that the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). *Pro se* parties "must follow the same rules of procedure that govern other litigants." *August v. Caruso*, No. 12-13775, 2015 WL 1299888, at *6 (E.D. Mich. Mar. 23, 2015). *See also Fields v. Cnty. of Lapeera*, No. 99-2191, 2000 WL 1720727, at *2 (6th Cir. Nov. 8, 2000) ("[I]t is incumbent on litigants, even those proceeding pro se, to follow the rules of procedure."); *Looper v. Educ. Credit Mgmt. Corp.*, No. 3:07–cv–306, 2008 WL 2965887, at *8 (E.D. Tenn. July 30, 2008) (plaintiff's "pro se status does not exempt [her] from complying with the rules of procedure."); *Greer v. Home*

*Realty Co. of Memphis Inc.*, No. 2:07–cv–02639–SHM–egb, 2010 WL 6512339, at *2 (W.D. Tenn. July 12, 2010) ("Although district courts may liberally construe the federal and local rules for pro se litigants, even pro se litigants are obligated to follow these rules"). Likewise, Liu's failure to take action to defend against the request for dismissal of his claims indicates that he does not oppose their dismissal or that he has abandoned his claims. *See Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007) (affirming the district court's conclusion that the plaintiff abandoned certain claims by failing to raise them in his brief opposing the government's motion to dismiss).

Further, notwithstanding Liu's failure to respond, an examination of the merits of Lancer's arguments shows that Lancer is entitled to relief under Rule 12(b)(6). Lancer contends that Liu's claims against it are barred by both res judicata and the doctrine of claim splitting. Res judicata, in its narrowest sense, is "the preclusion of claims that have once been litigated or could have been litigated" in a previous lawsuit. *Hutcherson v. Lauderdale Cty., Tenn.*, 326 F.3d 747, 758 n.3 (6th Cir. 2003). It "rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction." *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 797 n.4 (1996).

Under federal common law, res judicata applies when there is: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies;" (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Southall v. USF Holland, LLC*, No. 3:19-cv-01033, 2021 WL 396688, at *3 (M.D. Tenn. Feb. 3, 2021) (citing *Askew v. Davidson Cty. Sheriff's Office*, No. 3:19-cv-00629, 2020 WL 587424, at *3 (M.D. Tenn. Feb. 6,

16

2020) (quoting *Clemons v. Ohio Bureau of Workers' Comp.*, No. 17-4092, 2018 WL 1845871, at *1 (6th Cir. Mar. 8, 2018)) (footnotes omitted).

With respect to claim splitting, generally, a plaintiff "must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora." *Church Joint Venture, L.P. v. Blasingame*, 817 F. App'x 142, 146 (6th Cir. 2020) (quoting *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004)). "The prohibition against claim-splitting requires the plaintiff to present all material relevant to a claim in the first action and permits a district court to dismiss a second action grounded in that same set of facts." *Id.* (citing Restatement (Second) of Judgments § 25 (1982)). When a plaintiff brings multiple cases based on the same facts, the court has discretion to dismiss the subsequent suit as part of its inherent discretionary authority to manage its own docket. *Church Joint Venture, L.P.*, 817 F. App'x at 146. Claim splitting, however, does not apply to claims that were not ripe at the time of the first suit. *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260 (6th Cir. 2019) (citing *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006)). "Essentially, claim splitting is the same as res judicata, but with a presumption of a final judgment instead of an actual final judgment." *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260 (6th Cir. 2019).

Lancer argues that dismissal is appropriate under both theories because "this action is based on the 'same set of facts'" as the Original Lawsuit and Liu's counterclaims in the Original Lawsuit "revolve around the same set of facts, and are the same set of operative facts that he alleges in the instant action." (Docket No. 19 at 7.)

There is no dispute that the final three requirements for dismissal pursuant to res judicata are met. With respect to the second requirement, this action is between Liu and Lancer, who are precisely the same parties as those in the Original Lawsuit.

17

For the third requirement, this action arises out of the same core facts as the Original Lawsuit. In the Original Lawsuit, Liu asserted several counterclaims against Lancer based on Lancer's handling of the claim. (Case No. 3:23-cv-00010, Docket No. 14 at ¶ 24 ("[Lancer] failed to conduct a reasonable investigation of the claim and refused to pay the claim without reasonable investigation. [Lancer] acted in bad faith and unfair settlement practice.").) That same claim handling is also at issue in this lawsuit. (Docket No. 15 at ¶ 1 ("Plaintiff … brings forth this action against Defendants to address the egregious misconduct and Bad Faith exhibited by Defendants in its handling of Plaintiffs Insurance Claim and the misconducts of the insurer.").) Moreover, Liu sought leave to amend his counterclaims in the Original Lawsuit at least four times to assert additional allegations against Lancer, all of which the Court denied.[9] The proposed amendments in the Original Lawsuit that were not permitted are largely the same as the claims in this lawsuit.

For the fourth requirement, the causes of action in both this lawsuit and the Original Lawsuit overlap. Although Liu more clearly defined the causes of action in his amended complaint in this lawsuit than he did in his counterclaims in the Original Lawsuit, both complaining documents allege that Lancer is liable to Plaintiff for breach of contract, bad faith, fraud, perjury, unfair claims settlement practices, and intentional misrepresentation, all of which is related to Lancer's claim handling. (Docket No. 15 at ¶¶ 57–59, 65, 157–69; Case No. 3:23-cv-00010, Docket No. 14 at ¶¶ 45–73.) As further evidence of the overlap between causes of action in the two lawsuits, one of the proposed amended complaints that Liu sought to file in the Original

---

[9] The Court denied the following motions filed by Liu in the Original Lawsuit seeking to amend his counterclaims: (1) a November 30, 2023 motion to modify and add counterclaims (Case No. 3:23-cv-00010, Docket Nos. 32, 37); (2) a January 4, 2024 motion to "incorporate allegations" (Case No. 3:23-cv-00010, Docket Nos. 41, 53); (3) a January 23, 2024 motion to modify and add counterclaims (Case No. 3:23-cv-00010, Docket Nos. 48, 55); and (4) a March 28, 2024 motion to file counterclaims (Case No. 3:23-cv-00010, Docket Nos. 64, 79).

Lawsuit contains the exact same sixteen (16) claims against Lancer as the operative amended complaint in this lawsuit. (Docket No. 15 at 57–184; Case No. 3:23-cv-00010, Docket No. 64-1 at ¶¶ 47–184.)[10] In fact, in his motion for leave to file that proposed amended complaint, Liu stated that he would also "initiate a separate action" to assert his counterclaims. (Case No. 3:23-cv-00010, Docket No. 64 at 1.) The Court denied Liu's request to amend his counterclaims in the Original Lawsuit to assert those sixteen (16) claims against Lancer because Liu failed to provide the factual and legal bases for "good cause" under Rule 16(b) of the Federal Rules of Civil Procedure that would have allowed the Court to permit him to amend his counterclaim. (Docket No. 79.) Liu appears to have made good on his statement that he would file a separate lawsuit to assert his counterclaims.

The only question is whether the first element – that there has been a final decision on the merits – is satisfied. Lancer argues that yes, Liu's motions to amend his counterclaims in the Original Lawsuit were denied and, therefore, that denial serves as a final judgment on the merits. (Docket No. 19 at 5–6.) However, whether Lancer is correct about this first requirement is irrelevant because the doctrine of improper claim splitting presumes that the first element is met. *See Waad*, 762 F. App'x at 260. Accordingly, the Court need not determine if there has been a final decision in the Original Lawsuit in order to resolve Lancer's motion and determine whether dismissal is appropriate under Rule 12(b)(6) for failure to state a claim.

Accordingly, after careful consideration, the Court finds that Liu's claims against Lancer are barred by the doctrine of claim splitting because they should have been brought in the Original

---

[10] As another example of the copy-and-paste nature of the two complaints, Plaintiff includes the same misnumbered paragraphs in his amended complaint in this lawsuit as he did in his proposed second amended complaint in the Original Lawsuit. *Compare* Docket No. 15 at ¶ 68, 157 *with* Case No. 3:23-cv-00010, Docket No. 64-1 at ¶¶ 57, 157.

Lawsuit. In fact, Liu attempted to bring those claims in the Original Lawsuit, but failed to comply with the Federal Rules of Civil Procedure, the Court's Local Rules, and the applicable scheduling order. Liu was given multiple opportunities in the Original Lawsuit to bring the claims that he then brought in this separate proceeding. He failed to successfully assert those claims, and cannot use a subsequent lawsuit as a "do over." Pursuant to the Court's "general power to administer its docket," the Court finds it appropriate to dismiss Liu's claims against Lancer because they are "duplicative of another federal court suit." *Curtis*, 226 F.3d at 138 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, (1976)). Therefore, Liu's claims against Lancer should be dismissed under the doctrine of claim-splitting.[11]

Finally, in its motion, Lancer "requests an award of attorney fees and associated costs related to seeking dismissal of this frivolous filing pursuant to Rule 54(d) of the Federal Rules of Civil Procedure," but provides no basis for such an award and fails to comply with Local Rule 54.01. (Docket No. 19 at 1.) Accordingly, the Court finds that this request should be denied without prejudice to refiling. Any future requests for costs and attorney's fees must be submitted in accordance with Local Rule 54.01.

## C.    DEFENDANT GRANT'S MOTION (DOCKET NO. 23)

In his motion, Grant asks the Court to dismiss Liu's claim against him for "negligence and malpractice" pursuant to Rule 12(b)(2) because the Court lacks personal jurisdiction over him (Docket No. 23-2 at 5–13), and pursuant to Rule 12(b)(1) because the Court lacks subject matter jurisdiction as there is a not a complete diversity of citizenship (*id.* at 13–14). In support of his motion, Grant filed his own declaration. (Docket No. 23-1.)

---

[11] Because the Court recommends that all of Liu's claims against Lancer be dismissed, the Court will not address Lancer's request for dismissal under Rule 12(b)(5) for insufficiency of service. (Docket No. 19 at 9–10.)

As an initial matter, Liu responded to Grant's motion, but failed to do so in a timely manner as required under Local Rule 7.01(a)(3). (Docket No. 28.) The response was filed more than fourteen (14) days after service of the motion. Accordingly, Grant's motion is deemed to be unopposed. *See* Local R. 7.01(a)(3) ("If a timely response is not filed, the motion shall be deemed to be unopposed . . . ."). Liu also filed a sur-reply, but did not seek permission from the Court do so. (Docket No. 30.) Accordingly, the Court will not consider the arguments set forth in either Liu's response or sur-reply, but even if it did, those arguments are unavailing.[12] An examination of the merits of both Grant's and Liu's arguments shows that this Court does not have personal jurisdiction over Grant, and therefore Grant must be dismissed as a party.

### 1.    Personal Jurisdiction Under Rule 12(b)(2)

Grant argues that the Court should dismiss Liu's claims against him because the Court lacks both specific and general jurisdiction over him. When a motion to dismiss for lack of personal jurisdiction is filed under Rule 12(b)(2), the plaintiff has the burden of establishing the existence of jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The district court may determine the motion "on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020) (quoting *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). When the district court rules based on written submissions alone, as in the present case, the plaintiff need only make out a prima facie showing that personal jurisdiction exists. *Id.* at 504. In such an instance, the pleadings and affidavits are considered in the light most favorable to the plaintiff, and the court does not consider

---

[12] Grant filed an objection and asked that the Court disregard Liu's arguments in his sur-reply because the sur-reply was not authorized by the Court. (Docket No. 31.)

or weigh the controverting assertions of the defendant. *Kelly v. Int'l Capital Res., Inc.*, 231 F.R.D. 502, 509 (M.D. Tenn. 2005). Dismissal is proper "only if all the specific facts which the plaintiff … alleges collectively fail to state a prima facie case for jurisdiction." *Id.* (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).

To exercise personal jurisdiction in a diversity case, a federal court must have authorization under the state's long arm statute and must not run afoul of constitutional due process protections. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). "Tennessee's long-arm statute has been interpreted to be 'coterminous with the limits on personal jurisdiction imposed' by the Due Process Clause of the United States Constitution, and thus, 'the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.'" *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005). Therefore, the Court need only address whether exercising personal jurisdiction over Grant is consistent with federal due process requirements. *Id.*

A court's assertion of personal jurisdiction over a defendant does not violate due process if the defendant has purposefully established "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Purposeful availment of the forum state's benefits and protections is required to satisfy the minimum contacts requirement. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.*

Personal jurisdiction can be either general or specific. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). General jurisdiction is present when a defendant's contacts with the forum

22

state are "substantial" and "continuous and systematic," such that a state may exercise personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. *Id.* at 418. Specific jurisdiction is proper when the claims in the case arise from or are related to the defendant's contacts with the forum state. *Intera Corp.*, 428 F.3d at 615.

The Court finds that the actions of Grant – as set forth in the amended complaint (Docket No. 15) and Grant's declaration (Docket No. 23-1) – show that this Court has neither general nor specific personal jurisdiction over Grant. First, there are no allegations that Grant has sufficient general contacts with the state of Tennessee to support the exercise of general jurisdiction over him. Accepting the allegations in the amended complaint as true, Grant entered into a contract with Liu, who is a "Tennessee citizen" but who resides in Georgia, to represent Plaintiff with respect to Lancer's "misconducts." (Docket No. 15 at ¶¶ 4, 8.) Liu asserts that Grant should have filed a lawsuit in Tennessee, but instead wrongly chose to file a lawsuit in California. (*Id.*) Liu has provided no other facts to support that this Court has general jurisdiction over Grant. *See Kelly*, 231 F.R.D. at 509. Such assertions fall well short of establishing general jurisdiction over Grant, which would require that his affiliations with Tennessee be "so continuous and systematic as to render [him] essentially at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

Further, as set forth in his declaration, Grant resides in California; is licensed to practice law and does practice law in California and not in Tennessee; does not own any real property in Tennessee; and does not advertise legal services in Tennessee. (Docket No. 23-1 at ¶¶ 12–13, 15–16, 20.) The Court assumes the veracity of this declaration because it does not conflict with the facts as alleged in the amended complaint. *See Kerry Steel Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997) (affirming district court's dismissal for lack of personal jurisdiction based

on defendant's affidavits, which "were in no way inconsistent with the facts set forth by the plaintiff"). In short, Grant's contacts with the state of Tennessee are minimal. *See Dillard v. Morris Nat'l, Inc.*, 2016 WL 8539788, at *3 (M.D. Tenn. Feb. 22, 2016). Accordingly, the Court concludes that it lacks general jurisdiction over Grant.

Second, the Court may not exercise specific jurisdiction over Grant because he did not purposefully avail himself of the state of Tennessee. Purposeful availment is "something akin to a deliberate undertaking to do or cause an act or thing to be done [in the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of the [forum state's] opportunities." *Bridgeport Music*, 327 F.3d at 478 (quoting *Neogen*, 282 F.3d at 891) (alteration in original). The Sixth Circuit established a three-prong test to determine whether specific jurisdiction exists and to ensure the exercise of jurisdiction does not violate a defendant's due process rights: (1) the defendant must purposefully avail itself of the privilege of acting or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts or consequences of the defendant must have a substantial connection to the forum state so as to make the exercise of jurisdiction reasonable. *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). *See also Youn*, 324 F.3d at 418. Although all three factors must be considered, "the *Mohasco* court called purposeful availment the 'sine qua non for in personam jurisdiction.'" *Kerry Steel Inc.*, 106 F.3d at 150.

As for the first prong of the *Mohasco* test, which is the most important, the facts alleged by Liu in his amended complaint do not suggest that Grant took any deliberate actions that then caused an effect in Tennessee. Liu contends that Grant entered into a contract with Liu and that Liu is a citizen of the state of Tennessee but resides in Georgia. However, there is no indication

24

that Grant contacted Liu in order to represent him; traveled to Tennessee; took any legal actions on behalf of Liu in Tennessee; or otherwise conducted activities in Tennessee. In his untimely response, which this Court need not consider, Liu argues that the Court has jurisdiction over Grant because he "signed the contract which is to be performed in Tennessee."[13] (Docket No. 28 at 1.) However, as set forth by Liu himself, Grant's contacts with Tennessee are based only upon his contract with Liu to provide legal services, and this alone is not enough to establish personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.") The fact that Liu has a connection to Tennessee or is a party to a lawsuit in Tennessee does not establish that Grant purposely availed **himself** of Tennessee.

The second prong of the *Mohasco* test also shows that this Court does not have specific jurisdiction over Grant. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." 401 F.2d at 384 n.29. Liu's "negligence and malpractice" action against Grant stems from Grant's alleged "unreasonable delay, poor communication, breach of his contracted duty, filing a claim to wrong court, accepting his client rejected offer without authorization, advising defendant his client's goal, holding important documents and settlement money after withdrawal etc." with respect to the California Lawsuit. (Docket No. 15 at ¶ 186.) In other words, the operative

---

[13] Liu also argues in his untimely response that the Court has jurisdiction over Grant because Grant "provided defective product (service) to a consumer of Tennessee." (Docket No. 28 at 3.) However, Liu does not allege in his amended complaint that Grant provided a defective product, so the Court finds no merit in this argument. Further, to support this argument, Liu cites to an irrelevant case from a different circuit that discusses whether venue was appropriate. (*Id.* at 3–4 (discussing *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1211–12 (M.D. Fla. 2002)).)

25

facts are related to Grant's contact with California. None of these facts are related to Grant's contact with Tennessee. Accordingly, Liu's cause of action does not arise from Grant's activities in Tennessee.

The final *Mohasco* factor asks whether the acts or consequences of the defendant have enough of a substantial connection to the forum state so as to make the exercise of jurisdiction reasonable. *Kelly*, 231 F.R.D. at 512. In determining reasonableness, the Sixth Circuit evaluates: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy. *Intera Corp.*, 428 F.3d at 618. Here, exercising jurisdiction over Grant would not be reasonable. The burden on Grant would be disproportionately high. Liu's allegations center on Grant's purported conduct in California regarding a lawsuit filed in California. There is no interest on the part of Tennessee to decide a dispute about the conduct of a California-licensed attorney as it relates to a California-based lawsuit. Because Liu has failed to establish either that Grant purposefully availed himself of the benefits and protection of Tennessee law or that Liu's cause of action arises from any contacts between Grant and this forum, it is clear that the exercise of jurisdiction in this case would not be reasonable. *See Moore v. Shanahan Engineering, Inc.*, No. 3:20-cv-00021, 2020 WL 5039443, at * 7 (M.D. Tenn. Aug. 25, 2020).

For these reasons, the Court cannot exercise personal jurisdiction over Grant and Liu's claim against Grant for "negligence and malpractice" must therefore be dismissed.

## 2. Subject-Matter Jurisdiction Under Rule 12(b)(1)

Grant also asserts that this action should be dismissed for lack of subject-matter jurisdiction because complete diversity is lacking. (Docket No. 23-2 at 13–14.) Subject-matter jurisdiction is a "threshold question" in any federal case. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534,

537 (6th Cir. 2007). There are two basic types of subject-matter jurisdiction: federal-question jurisdiction and diversity-of-citizenship jurisdiction. 28 U.S.C. §§ 1331, 1332. A plaintiff invokes diversity jurisdiction when he or she presents a claim between parties who are citizens of different states and the value of that claim exceeds $75,000. 28 U.S.C. § 1332(a). There must be complete diversity of citizenship between all plaintiffs and all defendants. 28 U.S.C. § 1332(a)(2). Complete diversity exists when "no plaintiff and no defendant are citizens of the same state." *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC.*, 176 F.3d 904, 907 (6th Cir. 1999) (citing *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992)).

Rule 12(b)(1) allows for the dismissal of an action for lack of subject-matter jurisdiction through a motion that challenges either the "sufficiency of the pleading itself (facial attack) or the factual existence of the subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). The plaintiff bears the burden of establishing jurisdiction, *Kokkonen*, 511 U.S. at 377, and the court must dismiss the case without prejudice if that burden is not met. *Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005). The court must accept the allegations of the complaint as true when analyzing whether a plaintiff has pleaded a basis for subject-matter jurisdiction. *Cartwright*, 751 F.3d at 759.

Citizenship for purposes of the diversity statute "means domicile rather than residence." *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973). "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Woods*, 2013 WL3324062 at * 1 (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). "To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." *Stifel*, 477 F.2d at 1120. Both of these factors

27

must be met, "either without the other is insufficient." *Persinger v. Extendicare Health Services, Inc.*, 539 F. Supp. 2d 995, 996-97 (S.D. Ohio Feb. 12, 2008) (citing *Kaiser v. Loomis*, 391 F.2d, 1007, 1009 (6th Cir. 1968) ). "Mere absence from a fixed home, however long or continued, cannot in and of itself effect a change in domicile." *Id.*

> When a party's domicile is in doubt, courts must utilize a totality of the circumstances, case-by-case approach, weighing a variety of relevant factors. Factors frequently taken into account include: the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity. No single one of these factors is dispositive, and the analysis does not focus simply on the number of contacts with the purported domicile, but also their substantive nature.

*France v. CSX Transp., Inc.*, No. 2:11–CV–079, 2012 WL 2887160, at *2–3 (E.D. Tenn. Jul. 13, 2012) (citing *Ford Motor Co. v. Collins*, No. 11–15011, 2011 WL 5877216, at *2 (E.D. Mich. Nov. 23, 2011) (internal quotation marks and citations omitted). A district court "has wide discretion" to consider affidavits and other evidence without the motion being converted to one for summary judgment to determine if diversity exists between the parties. *See Ohio Nat'l Life Ins. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990).

The plaintiff Shenji Liu, is an individual, who asserts that he does business as Stone Buddha Transport. (Docket No. 15 at ¶¶ 1, 3.) Accordingly, the key question is where Liu the individual is domiciled. He alleges that Stone Buddha Transport is a company headquartered in Tennessee, but that he resides in Georgia. (*Id.* at ¶ 3.) There is no evidence in the record to indicate Liu's voter registration and voting practices, situs of personal and real property, location of brokerage and bank accounts, and so forth. *See France*, 2012 WL 2887160 at *2–3. The only evidence in the record related to Liu's purported domicile is that he resides in Georgia: in the amended complaint,

Liu asserts that he resides in Georgia (*id.* at ¶ 3), and in his untimely response, he supports this assertion by stating that he "filed the lawsuit as a Georgia citizen" (Docket No. 28 at 4).

Accordingly, based on the allegations within the amended complaint, the Court finds that Liu is a citizen of the state of Georgia. The defendants are all alleged to be citizens of states other than Georgia. Accordingly, the Court finds that there is complete diversity between the parties and, therefore, the Court has subject matter jurisdiction over Liu's claims. The Court will deny Grant's motion to dismiss Liu's claims pursuant to Rule 12(b)(1) but without prejudice to refiling by Grant or any other party. The Court makes this finding that Liu is a citizen of the state of Georgia based on the information before it, which is limited to the allegations in the amended complaint. The parties have presented no other evidence to aid the Court in determining Liu's domicile. If the parties receive additional information regarding Liu's domicile and seek to challenge this Court's subject matter jurisdiction, they may do so via motion pursuant to Rule 12(b)(1).

Nevertheless, as detailed above, the Court finds that Liu's claims against Grant must be dismissed for reasons apart from subject matter jurisdiction.

## IV.    RECOMMENDATION

For the reasons set forth above, it is respectfully **RECOMMENDED** that:

1.    Defendant Kay Griffin Evans PLLC's motion to dismiss (Docket No. 18) be **GRANTED IN PART** and Defendant Kay Griffin Evans PLLC be **DISMISSED** as a party from this lawsuit;

2. Defendant Lancer Insurance Company's motion to dismiss (Docket No. 19) be **GRANTED** and Defendants Lancer Insurance Company and Lancer Management Company be **DISMISSED** as parties from this lawsuit;

3. Defendant Richard L. Grant's motion to dismiss (Docket No. 23) be **GRANTED** and Defendant Richard L. Grant be **DISMISSED** as a party from this lawsuit; and

4. Plaintiff's claims against Defendants Mark Slane,[14] Tennessee Department of Insurance, and Tennessee Board of Professional Responsibility remain pending.

Further, the Clerk is **DIRECTED** to:

1. Designate the filing located at Docket Entry No. 20 as a response to the motion located at Docket Entry No. 18, rather than a separate motion;

2. Designate the filing located at Docket Entry No. 28 as a response to the motion located at Docket Entry No. 23, rather than a separate motion; and

3. Designate the filing located at Docket Entry No. 30 as a sur-reply to the motion located at Docket Entry No. 23, rather than a separate motion.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections

---

[14] Defendant Mark Slane's motion to dismiss (Docket No. 37) remains pending and will be addressed by separate report and recommendation.

must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge